UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION


IN RE:

JEFFREY LEE LUNDEEN                           Chapter 7
MELISSA ANN LUNDEEN

    Debtors.                          Bankruptcy No. 04-02327S

LUIS A. YOUNG
CATHY M. YOUNG

    Plaintiffs

vs.                                          Adversary No. 04-9162S

JEFFREY LEE LUNDEEN,
dba JJ Mac Construction
and Siding Co.

    Defendant.


<u>DECISION</u>

    Luis A. Young and Cathy M. Young request that their claim
against Jeffrey L. Lundeen be excepted from his discharge.
Trial was held April 5, 2005 in Sioux City.  Robert W. Green
appeared as attorney for Youngs.  Craig H. Lane appeared as
attorney for Lundeen.  I have jurisdiction of this proceeding
under 28 U.S.C. § 1334(b) and § 157(a), and the District
Court's Order of Reference.  This is a core proceeding under
28 U.S.C. § 157(b)(2)(I).

    Luis A. Young and Cathy M. Young are married and live in
Sioux City.  The Youngs wanted to make substantial
improvements to their modular home.  Sometime in perhaps late
2003, Youngs entered into an oral agreement with Dan Rahn who
operated R & R Construction.  Rahn was to build an above-

ground, full-basement foundation for Youngs' modular house and place the house on top of it. A garage and living area would be located in the newly constructed lower level. This work was completed. One of the workmen on the Youngs' project was a man named Corey Budde. Mrs. Young believes he was a subcontractor hired by Dan Rahn. Budde was to construct a firewall in the new lower level of the house between the living quarters and the garage area. He was also supposed to build a stairway from the upper level of the house to the new lower level and enclose it with sheetrock.

Part of Youngs' arrangement with Rahn was that Youngs would pay for materials and that they would pay the various subcontractors directly and that they would pay Rahn separately.

Budde apparently had some difficulty in constructing the staircase, and he contacted Jeffrey Lundeen to help him. Mrs. Young said that the first time she met Lundeen, he was with Jeff Nelson, the man who sold Youngs the house and who did some finishing work inside the home. She believes Lundeen was first hired to work on the house by Rahn.

Lundeen testified that Corey Budde called him and asked him to help with the stairs, firewall and sheetrocking. Lundeen does not know if Budde was hired by Rahn or Youngs. Lundeen said he met with Luis Young and told him that he would do the work for $1,500.00 and that Youngs were to pay for materials purchased by either Lundeen or Budde. Lundeen said

there was no written agreement.   Lundeen used materials he
already had on hand including stair treads, runners, and
lumber.   Lundeen said he told Luis Young that he would be
working at night or weekends because he was also working on
another project.   He said he completed the work on Youngs'
house either by the end of March 2004 or the beginning of
April.   He never made an oral demand on Youngs for payment,
and he never submitted a written invoice to them.

Mrs. Young testified that she paid workers as she was
presented with invoices either by the workers or Rahn.   She
wrote two checks to Lundeen, one on February 23, 2004 for
$150.00 bearing the memo notation "Stairway," and a second on
March 1, 2004 for $125.00 bearing the memo notation
"Carpentry."   (Exhibits 5 and 4, respectively.)   She says
these were the only two requests for payment to Lundeen.
Although she was not always present during construction, Mrs.
Young believes that Budde did the work on the stairs and
firewall.   She does not deny that Lundeen worked on the
project.

Lundeen says that one of the two checks was for his
materials.   The other check was for working on windows and
doors including their insulation and caulking.   He says that
he and his employees put in 35 hours on the wall and stairs
and that he charges $50.00 per hour.

Youngs wanted to do additional work to the home, and they
hoped to obtain a bank loan to finance it.   They asked for

bids for the work.  Budde and Lundeen each submitted separate written bids.  The work was to include building two decks on the house, constructing sidewalks, laying footings and a concrete slab onto which would be moved an existing two-car garage, and siding the new part of the house.  Lundeen says that Youngs asked him to add the $1,500.00 from his earlier work to the bid so that they could cover it under bank financing.  He said he did this.  The bid was not offered into evidence, so I do not know whether Lundeen gave Youngs an estimate on the cost of the siding or whether he showed any charges for his previous work.

Mrs. Young said they accepted Lundeen's bid.  She said the bid was close to $30,000.00.  It was approved by the bank. Mrs. Young says the bank would permit Youngs to pay for the materials purchased during the work, but that they were not to pay for labor until the work was completed and approved by the bank.  She testified that she informed Lundeen of the bank's conditions, and he accepted the project.

Lundeen agrees that he was told that the loan was conditional on bank's approval of the work.  He said he could not work that way, and that in a telephone conversation in April, he told Luis Young that he was not accepting the job.

In having the new part of the house sided, Youngs hoped to match the siding already on the modular house.  Lundeen said he had looked for the siding before he had any conversation with Luis declining the project.  Luis asked him

4

to buy the siding and deliver it, and Youngs would pay for the materials.

Lundeen went to General Siding Supply in Sioux City to obtain the siding materials.  On March 29, 2004, he met with Dennis Bruening who worked there both at the counter and in the warehouse.  A warehouse sheet (exhibit 2) was filled out showing 12 squares of siding, four pieces of corner post, 15 pieces of J-channel siding, and one coil of PVC.  Lundeen told Bruening to write the cost at $3,136.68 for the materials.  Tax was added in the amount of $219.57 for a total estimate of $3,356.25.

Lundeen presented the warehouse sheet to Youngs and was paid $3,356.25.  Lundeen purchased the above items and some others on April 1, 2004.  Lundeen says that three coils of PVC were purchased for Youngs.  If that is true, the total cost for the siding materials delivered to Youngs was $1,044.75.  If only one coil of PVC was delivered, the total cost of siding materials delivered to Youngs was $888.53.

Lundeen said he had been "burned" before by other customers, and had the feeling in dealing with the Youngs that he would be burned again, and would not be paid for his labor on the wall and stairs.  In order to protect himself, he said he added $1,500.00 to the actual cost of materials.  He also added $150.00 for his time in obtaining the materials, $20.00 for vehicle fuel, $20.00 for wear and tear on his truck, and some amount of markup for his efforts.  His testimony was not

clear on the amount of the markup.

Lundeen did not inform Youngs that he was adding these amounts to the actual cost of the siding materials.  When he was paid, he realized and understood that Youngs thought they were paying only for the materials.

Lundeen said that he never agreed to install the siding, and he never went back to Youngs.  Mrs. Young says he agreed to do the siding work and said he would complete it in a couple of days.  Luis Young did not attend the trial.

DISCUSSION

Youngs allege that Lundeen defrauded them out of $2,467.72.  That amount, they argue, is the difference between the actual cost of the siding materials ($888.53) and the amount they were billed for them by Lundeen ($3,356.25).  They contend that Lundeen obtained the amount of the excess charge by false representation.  The relevant section of the Bankruptcy Code would be 11 U.S.C. § 523(a)(2)(A).

To establish fraud within the context of 11 U.S.C. § 523(a)(2)(A), the creditor must prove the following elements by a preponderance of the evidence:

1.  The debtor made a representation.

2.  The debtor knew the representation was false at the time it was made.

3.  The representation was deliberately made for the purpose of deceiving the creditor.

6

4.   The creditor justifiably relied on the representation.

5.   The creditor sustained the alleged loss as the proximate result of the representation having been made.

<u>Burt v. Maurer (In re Maurer)</u>, 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000).

Notwithstanding the dispute over whether Lundeen had agreed to do the siding work, or other work for which he had submitted a bid, he did agree to pick up the siding he had found which matched the siding on Youngs' house.  Lundeen says he declined the job and his only responsibility was to pick up and deliver the siding.  Mrs. Young believes Lundeen accepted the job and that they were to be billed only for the actual cost of the siding as purchased from the supplier.

This is a dispute over the formation and terms of a contract.  To decide the pending dispute, I do not need to resolve the contract question.  Although it may have been part of a misunderstanding or the subject of dispute, it was not fraudulent for Lundeen to add delivery charges, a charge for his time, and a markup in price for finding and delivering the siding materials.  He may have overcharged or charged in contravention of an agreement, but he did not defraud Youngs by making the charges.

I find otherwise as to the $1,500.00.  Lundeen added $1,500.00 to the material bill in order to collect a debt he said was owed to him by Youngs for his labor on the firewall

7

and stairs.   In presenting the Youngs with a bill for

$3,356.25, he made a representation that the charges were for

the siding materials.   This was a material fact.   It was

false, and he knew it.   He intended to deceive Youngs, and

they substantially relied on the misrepresentation.   As a

result, they paid the $1,500.00, not knowing it was for a

charge for which they had never been billed.

I do not think it matters to the outcome of the complaint

whether I could find, or another court might find, that

Lundeen was actually owed the $1,500.00 for the previous work

on the home.   It might be seductive to ask whether someone can

defraud someone by lying to them to get something to which he

is actually entitled.   I decline to ask that question.   Mrs.

Young disputes the $1,500.00 charge.   Lundeen never presented

an invoice for the previous work.   The debt might have been

disputed at the time Lundeen presented his request for

repayment for the siding.   Indeed, Lundeen testified that he

thought that Youngs might not pay.   He should not have hidden

the $1,500.00 charge in the siding bill.   Youngs had a right

to a commercially appropriate process in dealing with the

charges for the stairs and firewall.   Lundeen subverted the

process giving Youngs no opportunity to dispute or question

the $1,500.00 charges.   He did so by fraud.

I conclude that Jeffrey Lundeen obtained money from

Youngs by false representation and that Youngs' claim against

Lundeen, to the extent of $1,500.00, is excepted from

8

Lundeen's discharge under 11 U.S.C. § 523(a)(2)(A).  Judgment

shall entered accordingly.

DATED & ENTERED:  April 14, 2005

William L. Edmonds, Bankruptcy Judge